## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CAROL LIOGGHIO and
HARRY LIOGGHIO,

      Plaintiffs,

                                      Civil Action No. 15-12803

v.

                                      HONORABLE DENISE PAGE HOOD

TOWNSHIP OF SALEM, GARY
WHITTAKER, DALE CONVERSE,
DEL WENSLEY, JOHN DANIEL,
T.J. McLAUGHLIN, MERIBETH
SCHMIDT and DAVID TRENT,

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Partial), GRANTING MOTION TO CLARIFY/ADJOURN SCHEDULING DATES, and SETTING STATUS/SCHEDULING CONFERENCE DATE

## I.      BACKGROUND

On August 10, 2015, Plaintiffs Carol Liogghio and Harry Liogghio filed the

instant suit against Defendants Salem Township, Gary Whittaker, Dale Converse, Del

Wensley, John Daniel, T.J. McLaughlin, Meribeth Schmidt and David Trent

(collectively, "Defendants"), amended on October 21, 2015, alleging: Retalitory (sic)

(Constructive) Discharge in Violation of Plaintiff Carol Liogghio's First Amendment

Rights under 42 U.S.C. § 1983 (Count I); Intentional Infliction of Emotional Distress

alleged by Plaintiff Carol Liogghio (Count II); Civil Conspiracy alleged by Plaintiff

2:15-cv-12803-DPH-MKM   Doc # 33   Filed 08/09/16   Pg 2 of 17   Pg ID 263

Carol Liogghio (Count III); Violation of Michigan Whistleblowers Protection Act, M.C.L. § 15.361, *et seq*. alleged by Plaintiff Carol Liogghio (Count IV); and, Loss of Consortium alleged by Plaintiff Harry Liogghio (Count V).

Carol Liogghio was hired in 1998 by the then-Salem Township Supervisor, Mike Penn. (Am. Comp., ¶ 12) Fred Roperti was the Township Supervisor from 2000 to 2008, followed by Robert Heyl from 2008 through 2012. (Am. Comp., ¶¶ 13, 14) Carol Liogghio performed various duties, including: Editor of the Salem Township newsletter; developing the Landfill Pass System; preparing the monthly Board of Trustees agenda and packets; reconciling Salem Township checking accounts; notarizing documents as a Notary Public; organizing several community annual programs; was in charge of FOIA activities; working with the contracted building department coordinator; issuing building permits; and, assisting the Township Clerk, the Township Treasurer, the Township Supervisor, the Fire Department. (Am. Comp., ¶¶ 12-14)

In 2012, Township Supervisory Bob Heyl requested Carol Liogghio to run as the Township Clerk, with Heyl seeking re-election as the Township Supervisor. (Am. Comp., ¶ 15) In August 2012 the "Whittaker Slate" was formed for and won the election which included, Defendants Whittaker (Supervisor), Converse (Treasurer), Wensley (Clerk), Daniel (Trustee), McLaughlin (Trustee), Schmidt (Trustee) and

Trent (Trustee) formed the "Whittaker Slate" which won the election. (Am. Comp., ¶ 16)

After the November 2012 election and prior to Whittaker taking office as the Township Supervisor, Whittaker requested outgoing Township Supervisor Heyl to fire Carol Liogghio, but Heyl refused to do so. (Am. Comp., ¶ 17) Whittaker advised a township resident that he was not going to fire Carol Liogghio, but instead would force Liogghio to quit. (Am. Comp., ¶ 18) Whittaker told Carol Liogghio that he could not work with her. Whittaker accused Liogghio of making public statements about his personal farm and the activities he conducted at the farm, which Liogghio denied making such statements. (Am. Comp., ¶ 19) The following thirteen months after the election, Defendants systematically removed Carol Liogghio from all of her important duties and responsibilities and made Liogghio's working conditions intolerable. (Am. Comp., ¶ 20)

On January 2, 2015, Whittaker ordered Carol Liogghio to issue landfill passes to anyone who had a tax bill with their name on it. Liogghio advised Whittaker that the policy required the person to have an application form printed by the Landfill indicating a driver's license with a Salem Township address. Liogghio then indicated to Whittaker that she had no choice but to notify the Landfill Manager and the Township Officials about Whittaker's alleged wrongdoing. Whittaker became

outraged and began to scream and holler at Liogghio.  This caused Liogghio to suffer

extreme emotional distress, at which time she left work and based on her doctor's

orders, did not return to work.  (Am. Comp., ¶ 21)

This matter is before the Court on Defendants' Motion to Dismiss the Amended

Complaint for failure to state a claim upon which relief may be granted.  A response

and reply have been filed.

## II.   ANALYSIS

### A.   Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure  provides for a motion to dismiss

based on failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court

explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do[.]  Factual allegations must be enough to

raise a right to relief above the speculative level...." *Id.* at 555 (internal citations

omitted).  Although not outright overruling the "notice pleading" requirement under

Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best

forgotten as an incomplete negative gloss on an accepted pleading standard."  *Id.* at

563.  To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at
570.  A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability
requirement," but it asks for more than a sheer possibility that a defendant has acted
unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a
defendant's liability, it "stops short of the line between possibility and plausibility of
'entitlement to relief.'" *Id.* at 557.  Such allegations are not to be discounted because
they are "unrealistic or nonsensical," but rather because they do nothing more than
state a legal conclusion–even if that conclusion is cast in the form of a factual
allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681  (2009).  To survive a motion to
dismiss, the non-conclusory "factual content" and the reasonable inferences from that
content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief.  *Id.*
Where the well-pleaded facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged, but it has not shown, that the
pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  The court primarily considers the
allegations in the complaint, although matters of public record, orders, items
appearing in the record of the case, and exhibits attached to the complaint may also
be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

### B.      42 U.S.C. § 1983 / First Amendment Claim (Count I-Carol Liogghio)

Defendants move to dismiss Carol Liogghio's First Amendment claim against Defendants Converse, Wensley, Daniel, McLaughlin, Schmidt and Trent asserting there are no factual allegations as to these Defendants sufficiently alleging a First Amendment retaliation claim.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officers would have concluded that [the action at issue was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to

6

trial." *Id.*

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a Plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201.

To establish liability of any individual defendant, the plaintiff must show that the particular defendant was personally involved in the activities giving rise to the plaintiff's claims. *Rizzo v. Goode,* 423 U.S. 362, 371 (1976); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Personal liability of supervisory

personnel must be based on more than merely the right to control employees. *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). There must be facts alleging that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. *Id.* at 874. The doctrine of *respondeat superior* does not apply to § 1983 claims, unless a plaintiff shows that the defendants themselves acted on account of a constitutionally protected characteristic. *Iqbal*, 556 U.S. at 683; *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)(citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979). First Amendment retaliation claims are analyzed under a burden-shifting framework where a plaintiff must first make a prima facie case of retaliation of the following elements: 1) she engaged in constitutionally protected speech or conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness form continuing to engage in that conduct; 3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least by her protected conduct. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (quoting

8

*Scarbough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 240, 255 (6th Cir. 2006)).  If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct.  *Id.*  Unlike the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to the plaintiff to show pretext in First Amendment retaliation claims.  *Id.*

Defendant Converse is the Township Treasurer and Defendant Wensley is the Township Clerk.  (Am. Comp., ¶¶ 5-6)  Defendants Daniel, McLaughlin, Schmidt and Trent are Trustees for the Township.  (Am. Comp., ¶¶ 7-10)  As to the First Amendment Retaliation claim, the Amended Complaint refers to Defendants generally as follows:

>    20.    After November 20, 2012, during the following (13) months, Defendants systematically removed Plaintiff, Carol Liogghio, from all of her important duties and responsibilities and made Plaintiff's working conditions intolerable.
>
>    *   *   *
>
>    28.    Immediately upon taking office the Defendants, acting collectively, ratified Whittaker's decisions to take Plaintiff, Carol Liogghio, job duties away from her, cut back her hours of employment and to constantly ridicule her in his attempt to force her to retire.
>
>    *   *   *

9

31.   The Defendants, Township Trustees, by their deliberate indifference, allowed Defendant Whittaker to change Plaintiff's job duties, reduce her hours of employment, and take other punitive actions against Plaintiff without obtaining formal Board approval.

32.   The actions of the Defendants as above set forth, and in which caused Plaintiff, Carol Liogghio, to be constructively discharged were all accomplished by the Defendants in violation of Plaintiff's rights under the First Amendment to the United States Constitution as herein set forth.

(Am. Comp., ¶¶ 28, 31-32)

The allegations in paragraph 20 are conclusory where Carol Liogghio alleges that thirteen months after November 20, 2012, "Defendants" systematically removed Liogghio from all of her important duties and made the working conditions intolerable.  Paragraphs 28 and 31 are also conclusory in that Carol Liogghio alleges that "Defendants" "ratified" Whittaker's decisions to take duties away from Liogghio and "allowed" Whittaker to change Liogghio's job duties and reduce her hours of employment.  There are no facts alleged that as to each named individual Defendant (other than Whittaker) encouraged the specific incident of misconduct or in some other way directly participated in Whittaker's alleged misconduct.

In response to Defendants' motion, three affidavits and various Minutes (some are noted as "drafts") of the Salem Township Board of Trustees' meetings.  The Court will not consider Carol Liogghio's affidavit since the instant motion is filed under

Rule 12(b)(6) and only the pleadings–here, the Amended Complaint, is to be considered. As to the minutes, although these may be public records, it is noted that some are noted as "drafts" and many are incomplete. The minutes are submitted to show the various actions the Board of Trustees took to fill Carol Liogghio's duties while she was on sick leave and upon her return to show how her job duties were taken away from her. The minutes appear to show that certain duties and positions were given to other employees. However, it cannot be inferred that based on the minutes, the Trustees encouraged the specific incident of misconduct or in some other way directly participated in Whittaker's alleged misconduct. The minutes only show how the Board acted on a particular motion, but does not show each of the Defendant's action that a particular defendant encouraged the specific incident of misconduct or directly participated in Whittaker's alleged misconduct.

Based on the allegations as alleged in the Amended Complaint, Plaintiffs have failed to allege any personal involvement by Defendants Converse, Wensley, Daniel, McLaughlin, Schmidt or Trent. The allegations in Count I as to these Defendants should be dismissed. Plaintiffs do not seek to amend the Amended Complaint in their response.

### C.   Intentional Infliction of Emotional Distress (Count II-Carol Liogghio)

Defendants argue they are entitled to governmental immunity on the intentional

infliction of emotional distress claim.

The elements of intentional infliction of emotional distress are: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress.  *Doe v. Mills*, 212 Mich. App. 73, 91 (1995); *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985).

Pursuant to MCL § 691.1407(1), a governmental agency that is engaged in the discharge of a governmental function is immune from tort liability.  A governmental agency includes political subdivisions and municipal corporations.  MCL § 691.1401(d).  A municipal corporation includes a "township."  MCL § 691.1401(b). A governmental function is an activity that is expressly or impliedly mandated or authorized by the constitution, statute, local charter or ordinance or other law.  MCL § 691.1401(f).  Immunity is based upon the general nature of the activities, rather than the specific conduct.  *Smith v. Dep't of Public Health*, 428 Mich. 540, 608 (1987). The hiring, firing and management of employees is clearly a governmental function of the Township Board.  MCL § 41.75(a).

In Michigan, the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative, or executive authority.  MCL § 691.1407(5).  Absolute immunity applies even where a

12

plaintiff's claim alleges the commission of an intentional tort. *Armstrong v. Ypsilanti*, 248 Mich. App. 573, 594 (2001); *Hall v. McCarty*, 2013 WL 1012999 at *6 (E.D. Mich. Mar. 14, 2013).

Salem Township's actions, through its officials, in the hiring, firing and management of employees are subject to governmental immunity. The remaining individual Defendants are elective officials and are also entitled to absolute governmental immunity. Carol Liogghio's intentional infliction of emotional distress claim against all Defendants must be dismissed.

### D.    Civil Conspiracy (Count III-Carol Liogghio)

Defendants argue that Carol Liogghio has failed to state a civil conspiracy claim. Defendants note that Liogghio does not specify what law she is alleging Defendants violated.

In order establish a Section 1985(3) federal civil conspiracy claim, a plaintiff must establish: 1) a conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and 3) an act in furtherance of the conspiracy; 4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).

A civil conspiracy state law claim in Michigan must allege:  1) a concerted

13

action; 2) by a combination of two or more persons; 3) to accomplish an unlawful purpose; 4) or a lawful purpose by unlawful means. *Ahlers v. Schebil,* 188 F.3d 365, 374 (6th Cir. 1999).  A civil conspiracy, by itself, is not a cognizable claim but is defined by the tort that constitutes the underlying theory of liability.  *Roche v. Blair,* 305 Mich. 608 (1943).  In Michigan, a plaintiff alleging a civil conspiracy claim must prove a separate, underlying tort.  *Rondigo, LLC v. Township of Richmond,* 522 F. App'x 283, 287 (6th Cir. 2013)(citing *Early Det. Ctr., P.C. v. New York Life Ins. Co.,* 157 Mich. App. 618, 632 (1986)(A civil conspiracy claim cannot "exist in the air.")).

Carol Liogghio does not expressly assert whether she is claiming a federal or a state claim of civil conspiracy.  In this case, the Amended Complaint fails to allege the specific agreement or concerted action between all the Defendants that is unlawful. The Amended Complaint conclusorily alleges that Defendants Whitaker and Trent "conspired to force Plaintiff, Carol Liogghio, to quite (sic) her employment with Salem Township."  (Am. Comp., ¶ 44) The civil conspiracy claim does not allege any underlying and separate tort.  Because the intentional infliction of emotional distress fails to state a claim, if this is the alleged tort alleged by Carol Liogghio, then Liogghio's claim of "civil conspiracy" must be dismissed for failure to state a claim upon which relief may be granted.

     **E.**    **Whistleblowers Protection Act (Count IV-Carol Liogghio)**

Defendants seek dismissal of Carol Liogghio's Whistleblowers Protection Act because it is barred by the 90-day statute of limitations.  MCL § 15.363.  Carol Liogghio voluntarily dismissed her WPA claim in her response.  The law is set forth below in any event.

Under Michigan's WPA, a plaintiff must demonstrate that 1) she was engaged in protected activity as defined by the act; 2) the defendant discharged her; and, 3) a causal connection exists between the protected activity and the discharge.  *Chandler v. Dowell, Schlumberger, Inc.,* 456 Mich. 395, 399 (1998); MCL § 15.362.   A protected activity occurs when the plaintiff:  1) reports a violation or suspected violation of law or regulation to a public body; 2) is about to report such a violation to a public body; or, 3) is asked by a public body to participate in an investigation.  *Trepanier v. Nat'l Amusements, Inc.,* 250 Mich. App. 578, 583 (2002).  The plaintiff must reasonably believe a violation of law, regulation, or rule has occurred.  *See Melchi v. Burns Int'l Sec. Serv., Inc.,* 597 F. Supp. 575 (E.D. Mich. 1984).  A claim under the WPA must be initiated within 90 days after the occurrence of the alleged violation of the Act.  MCL § 15.236.

The Amended Complaint alleges that on January 2, 201**4**, Carol Liogghio refused to provide an individual with a landfill pass until the person could produce a driver's license with a Salem Township address.  (Am. Comp., ¶ 55) Defendant

15

Whittaker came into the Township in a rage and told Plaintiff to disregard the orders of the owners of the landfill as it relates to possessing a driver's license.  Liogghio advised Whittaker that it was her duty to report his conduct to both the owners of the landfill and the Township Board and that she intended to notify them of Whittaker's illegal action.  (Am. Comp., ¶¶ 56, 57) In paragraph 21 of the Amended Complaint, Carol Liogghio alleges her conversation with Whittaker as to the landfill passes occurred on January 2, 201**5**.

Even if the WPA claim was not dismissed voluntarily, the WPA claim must be dismissed as untimely.  If the alleged wrongdoing by Defendant Whittaker as to the landfill passes occurred on either January 2, 2014 or 2015, Carol Liogghio's WPA claim is untimely since the instant action was initially filed on August 10, 2015, well beyond the 90-days required under the WPA statute.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss Amended Complaint **(Doc. No. 17, 11/3/15)** is GRANTED.  Count I (Plaintiff Carol Liogghio's First Amendment Rights under 42 U.S.C. § 1983 claim is DISMISSED as to Defendants Converse, Wensley, Daniel, McLaughlin, Schmidt and Trent).  Plaintiff Carol Liogghio's claims against all Defendants set forth in Counts II (Intentional Infliction

16

of Emotional Distress), III (Civil Conspiracy) and IV (Violation of Michigan Whistleblowers Protection Act) are DISMISSED.

IT IS FURTHER ORDERED that Count I remains as to Defendants Salem Township and Whittaker.  Plaintiff Harry Liogghio's claim in Count V (Loss of Consortium against all Defendants) also remains.

IT IS FURTHER ORDERED that Defendants' Motion to Clarify/Adjourn Scheduling Dates **(Doc. No. 32, 7/28/16)** is GRANTED as set forth herein. Defendants, having agreed to stay discovery pending Plaintiff Carol Liogghio's recovery from her illness until January 2017, discovery and any dates issued are STAYED until the status/scheduling conference set for **Tuesday, January 10, 2017, 3:00 p.m.**  The parties must file an updated Rule 26(f)(3) discovery plan as to the remaining claims by January 6, 2017.  New dates/deadlines will be issued.


Dated: August 9, 2016                    s/Denise Page Hood
                                         HON. DENISE PAGE HOOD
                                         CHIEF JUDGE, U.S. DISTRICT COURT

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 9, 2016, by electronic and/or ordinary mail.

                                         s/Shawna C. Burns
                                         Case Manager